**UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT**

HARKAMAL SINGH,
    Petitioner,

    v.

GREG HALE, Superintendent, Northwest
Correctional Facility; DAVID WESLING,
Acting Director of the Boston Field Office,
U.S. Immigration and Customs Enforcement;
TODD LYONS, Acting Director of the U.S.
Immigration and Customs Enforcement, and
KRISTI NOEM, Secretary of the U.S.
Department of Homeland Security,
    Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:26-cv-53

## ORDER
(Doc. 1)

Harkamal Singh ("Petitioner" or "Singh") filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging the constitutionality of his arrest and detention by Customs and Border Patrol ("CBP"), which occurred on September 18, 2025. (Doc. 1.) Petitioner named several federal officials ("Respondents") and the Superintendent of the correctional facility where he is being held as Respondents. (*Id.* at 3–4.) Petitioner seeks an order for his immediate release from custody. (*Id.* at 8.) Because the court finds Singh was unlawfully detained in violation of the Fifth Amendment to the United States Constitution, the court GRANTS the Petition. Respondents are ordered to immediately release Petitioner.

### Factual and Procedural Background

Harkamal Singh, born on June 20, 1991, is a citizen of India. (Doc. 1 at 4, ¶ 21; Doc. 10-1 at 2, ¶ 6.) He was admitted to the United States, on December 3, 2002, on a K-2 visa as a

dependent of his mother, who had a K-1 Fiancé Petition. (Doc. 1 at 4–5, ¶ 22; Doc. 10 at 1.) The K-2 visa allowed him to remain in the United States until March 2, 2003. (Doc. 1 at 4–5, ¶ 22; Doc. 10-1 at 2, ¶ 7.) Petitioner was eleven years old when he entered the United States. He has not left the United States since 2002. (Doc. 1 at 4–5, ¶ 22.)

Petitioner was detained by United States Immigration and Customs Enforcement ("ICE") in New York on or about May 25, 2008. (*Id.* at 5, ¶ 23; *see* Doc. 10 at 1.) A Notice to Appear was filed in immigration court on or about May 22, 2008. (*Id.* at 5, ¶ 24; Doc. 10-1 at 2, ¶ 8.) Custody of Singh was transferred from ICE to the Office of Refugee Resettlement ("ORR"), as he was under the age of eighteen. (Doc. 1 at 5, ¶ 23.) On or about September 1, 2008, Singh was released from ICE detention to the custody of his biological father. (*Id.*) The court has not been provided with the Notice to Appear or any documents relating to the basis of his 2008 release from immigration custody. No evidence has been presented that Singh was required to post a bond or abide by any conditions upon his release, although he asserts he was released without conditions. (*See id.*)

Singh filed an asylum application on or about April 1, 2009. (*Id.* at 5, ¶ 24; *see* Doc. 10 at 2.) The application remains pending. (Doc. 1 at 5, ¶ 24.) An Immigration Court administratively closed his removal proceedings on May 3, 2013. (*Id.*; Doc. 10-1 at 2, ¶ 9.) This status left the removal proceeding, including consideration of his asylum application, inactive. CBP filed a Motion to Re-Calendar Proceedings before the immigration court in New York on March 9, 2026. (Doc. 10-1 at 3, ¶ 13.) It appears the proceedings were re-opened after March 9, 2026, and before March 17, 2026.

Following his release from CBP custody and initiation of removal proceedings in 2008, Petitioner applied for and received relief under the Deferred Action for Childhood Arrivals

("DACA") program beginning on June 28, 2013. (Doc. 10-1 at 2, ¶ 10.) DACA relief continued until July 10, 2023, when the United States Citizenship and Immigration Services ("USCIS"), as a matter of discretion, denied Singh's renewal application. (Doc. 10-1 at 3, ¶ 11.)

While Singh's removal proceedings remained administratively closed, an administration immigration warrant was signed on September 17, 2025. (Doc. 1-1 at 2.) The warrant, signed by an Acting Patrol Agent in Charge, directed "any officer delegated authority pursuant to Section 287 of the Immigration and Nationality Act . . . to take [Harkamal Singh] into custody for proceedings in accordance with the applicable provisions of the immigration laws and regulations." (*Id.*) The basis of the warrant reads:

> From evidence submitted to me, it appears that: Harkamal Singh an alien who entered the United States at or near New York City, New York on December 3, 2022 is within the country in violation of the immigration laws and is therefore liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act.

(*Id.*) Singh was arrested by CBP on September 18, 2025.* On that same date, a criminal complaint was filed in United States District Court for the District of Vermont alleging that Singh knowingly made a false statement when he attempted to purchase a firearm in October 2023. (Doc. 10 at 4.) CBP transferred custody of Singh to the United States Marshal's Service. (*Id.*) Singh remained in the custody of the Marshal's Service until March 4, 2026, when he was returned to CBP custody following his acquittal in federal court. (*Id.*; Doc. 1 at 6, ¶ 28.)

On March 5, 2026, Petitioner filed the instant Petition for a Writ of Habeas Corpus and an Emergency Motion for a Temporary Restraining Order. (Doc. 1.) In the Petition, Singh alleges

---

* Although filings submitted by both parties indicate Petitioner was arrested by CBP on September 17, 2025, (Doc. 1 at 7, ¶ 34; Doc. 10 at 2), the affidavit of probable cause executed by James F. Loomis, a task force agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, filed in support of the criminal complaint in *United States v. Harkamal Singh*, 2:25-cr-98 (Doc. 1-1 at 6, ¶ 12), indicates Petitioner was arrested at 6:20 a.m. on September 18, 2025. The administrative warrant is dated September 17, 2025, and indicates the warrant was served on Petitioner in Swanton, Vermont on September 18, 2025. (Doc. 1-1 at 2.)

3

that his detention violates the Fifth Amendment to the United States Constitution. (*Id.* at 6.) Petitioner contends his detention is unlawful "as his 2008 release from ICE and then ORR custody was without conditions. He could not be legally redetained by ICE or CBP without a change in circumstances, including the violation of the conditions of his release." (*Id.* at 7, ¶ 34.) The court granted a temporary restraining order, prohibiting Respondents from moving Petitioner outside the district. (Doc. 5.) The court also required Respondents to file a response to the Petition by March 10, 2026. (*Id.*)

Respondents filed an opposition to the Petition. (Doc. 10.) Specifically, Respondents assert CBP lawfully detained Singh in September 2025 pursuant to the 2008 Notice to Appear. (*Id.* at 4.) Respondents contend that because Singh did not enjoy lawful status in September 2025, he could be lawfully detained under 8 U.S.C. § 1226(a). (*Id.* at 4–5.) Should he seek relief, Respondents argue he must request a bond hearing before the immigration judge, which he has not done. (*Id.* at 5.)

A hearing on the Petition was held on March 17, 2026. During the hearing, Petitioner argued he was being unlawfully detained because CBP failed to administratively re-open the removal proceedings prior to producing a warrant for his arrest. Additionally, Petitioner represented his 2008 detention was permitted under 8 U.S.C. § 1226(a) before he was ordered released. Petitioner asserts that, absent the Government demonstrating a change in circumstances relating to his dangerousness to the community or risk of flight, he cannot be re-detained. In response, the Government maintains its position that regardless of the decision to release Singh in 2008, he could always be subject to detention at any point thereafter, even absent a change in circumstances, so long as he did not have lawful status.

**Analysis**

The Fifth Amendment's Due Process Clause prohibits deprivation of an individual's life, liberty or property without due process of law. U.S. Const. amend. V. The Due Process Clause entitles noncitizens to due process of the law in removal proceedings, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to 'all' persons within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). The Second Circuit has noted "[t]he Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Boumediene v. Bush*, 553 U.S. 723, 781 (2008)). In considering a claim under the Due Process Clause, courts must first determine whether there is a protected liberty interest. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). If a protected liberty interest exists, courts must then assess what procedures are necessary to ensure that any deprivation of that interest comports with constitutional requirements. *Id.* at 332–33.

## I.    Protected Liberty Interest

Petitioner asserts that since the time immigration authorities released him in 2008, he has enjoyed a liberty interest deserving of protection before he could be returned to detention. Respondents respond that Petitioner lacked legal status as of September 18, 2025. As a result, he is being lawfully detained under 8 U.S.C. § 1226(a) and has a right to seek a bond hearing before the immigration court.

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General may continue to

5

detain the individual or may elect to release the individual on bond or conditional parole. *Id.* § 1226(b). This discretionary framework for detention of noncitizens first allows the Attorney General or Secretary of Homeland Security to determine whether to release a noncitizen on bond or parole or detain him or her pending removal proceedings. *Id.* § 1226(a); *see also Nielson v. Preap*, 586 U.S. 392, 397 (2019). If detained, the noncitizen may seek review by an Immigration Judge, having the opportunity to establish that he or she is not a flight risk and does not present danger to the community. *Nielson*, 586 U.S. at 397–98.

It is under this provision that Respondents argue Petitioner is being detained. As a result, Respondents argue that Petitioner has the ability to seek review by an Immigration Judge. The flaw in Respondents' position, however, is that immigration authorities already exercised their discretion and released Singh. Although unwilling to answer the question directly, Respondents' position is that each and every day that a noncitizen does not have lawful status in the United States, even when granted release by immigration authorities and absent any change in circumstances, the noncitizen is subject to arrest under 8 U.S.C. § 1226(a). This cannot be the case. Otherwise, a noncitizen who has been granted discretionary release must be concerned that each day, whether it is the day after release or a decade after release, he or she could be arrested. A noncitizen who posted bond or is in compliance with conditions of release would need to fear that, despite payment of the bond and ongoing compliance with conditions, he or she could be detained at any point in time by immigration authorities. This could occur with, or without, reason. The only requirement, according to Respondents, is that the noncitizen must not have lawful status.

This reading of the law does not comport with the Constitution. While Section 1226(b) grants broad discretion to revoke a bond or parole granted under 8 U.S.C. § 1226(a), the Board of Immigration Appeals ("BIA") has long held that "where a previous bond determination has been

made by an immigration judge, no change should be made by a District Director absent a change of circumstance[s] . . . ." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *see also* 8 C.F.R. § 241.13(i)(2). The requirement for a change of circumstances has also been applied when the initial release decision was made by a Department of Homeland Security ("DHS") official. *See Saravia v. Sessions*, 280 F.Supp.3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Noncitizens, who have been granted discretionary release, have a protected liberty interest in remaining free from detention. *See Valdez v. Joyce*, 803 F. Supp. 3d 213, 217–18 (S.D.N.Y. June 18, 2025); *Lopez v. Sessions*, No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" which is protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

Here, Petitioner was detained by immigration authorities in 2008 because he lacked lawful status. He was released in that same year. According to the warrant authorizing his arrest, which was issued on September 17, 2025, Petitioner was arrested again, solely because he did not have lawful status. (Doc. 1-1 at 2.) Although Petitioner's liberty was conditional, it remains a protected liberty interest entitled to procedural due process protection. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). In fact, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).

## II.    Procedural Due Process

In determining what process is due to protect a liberty interest, courts have long been directed to consider three factors:  (1) "the private interest that will be affected by the official

7

action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### A. Private Interest

Petitioner was free from immigration custody for approximately seventeen years at the time of his arrest. During that time, he was actively engaged with the immigration process, applying for and receiving DACA relief for over a decade; he moved to Vermont from New York; he worked; and he married a United States citizen. As stated earlier, being free from physical restraint and detention "is the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529 (citing *Foucha*, 504 U.S. at 80.). There can be no greater liberty interest at stake than one's freedom. This factor weighs heavily in Petitioner's favor.

### B. Risk of Erroneous Deprivation

In considering this factor, the court must consider only the risk of erroneous deprivation of Petitioner's liberty interest. *Black v. Decker*, 103 F.4th 133, 152 (2d Cir. 2024) ("The only interest to be considered at this part of the *Matthews* analysis is that of the detained individuals—not the government." (citing *Hamdi*, 524 U.S. at 530)). Absent procedural protection, the court finds the potential for erroneous deprivation high. Singh was released from custody in 2008, presumably upon a finding that he did not pose a risk of danger to the community or a risk of flight. In September 2025, Petitioner was re-arrested based on an administrative immigration warrant citing only his unlawful status in the country as a basis for the arrest. There is no indication that any individualized assessment was done to determine the appropriateness of detention.

While Respondent's Opposition includes a recitation of Singh's contact with the criminal justice system, it includes only one criminal conviction for negligent operation from conduct that occurred over four years before his arrest. The remaining alleged conduct, which did not result in convictions, occurred over two years before his arrest. None of this history, however, was included as a basis for his arrest in September 2025.

Allowing immigration authorities to re-detain an individual, who has already been found to not be a flight risk or a danger to the community, absent any evidence of a change of circumstances, creates a high risk of erroneous deprivation of a person's liberty. Evidence of this risk can be found in the Declaration of Acting Assistant Field Director Brian E. Sullivan which failed to include reference to Petitioner's release from immigration custody in 2008, the filing of his asylum application, or his arrest by CBP on September 17, 2025. Acting Assistant Field Director Sullivan's declaration also included some unclear statements as to Petitioner's criminal history. For example, he asserts that Singh was arrested for driving under the influence in Barre, Vermont, which is in Washington County, but was convicted of negligent operation in Chittenden County. (Doc. 10-1 at 4, ¶ 18.) Additionally, his description of the federal criminal charges was incomplete in that he indicated Singh was charged with a firearm offense, rather than clarifying he had been charged with making a false statement in connection with the attempted acquisition of a firearm. (*Id.* at 4, ¶ 20.) These are important facts which could be relevant to a determination of changed circumstances and whether detention would have been appropriate. Absent some procedural protections or evidentiary findings by an independent arbiter, the risk of erroneous deprivation of liberty is clear. This factor also heavily weighs in Petitioner's favor.

## C. The Government's Interest

The Government's interest in detaining noncitizens is to ensure noncitizens do not flee and do not commit crimes. *Sidqui v. Almodovar*, No. 25-cv-9349 (VSB), 2026 WL 251929, at *15 (S.D.N.Y. Jan. 30, 2026). The court should also consider the administrative burdens associated with providing additional procedural protections. *Mathews*, 424 U.S. at 335.

While the court recognizes the important interest Respondents have in ensuring noncitizens appear and participate in immigration court proceedings and ensuring noncitizens do not pose a risk to the community, Respondents position does nothing to serve this interest. Instead, Respondents argue they are able to detain Singh, or any other noncitizen, at any point in time, despite an earlier decision to release the noncitizen from immigration custody, so long as he does not have lawful status. This interest is not compelling. It appears to be an indiscriminate use of power.

Requiring Respondents to establish a change of circumstances, relating to dangerousness or the possibility of flight is not a significant burden to place on the Government. DHS has required such documentation in the past. In their opposition, Respondents assert in a footnote that they do not support Petitioners release in light of his criminal history, but this was not their stated justification for detaining Singh, either in the warrant for his arrest or as part of this proceeding. Their stated reason for detaining Petitioner was simply because he did not lawful status. The court notes that, even if they had made an effort, Respondents may have faced difficulty establishing dangerousness based solely on dismissed charges from several years prior to Petitioner's arrest. Such a determination, however, cannot be made in the absence of any supporting information or independent review. Like the first two factors, this factor also weighs in favor of Petitioner.

10

After considering each of the *Mathews v. Eldridge* factors, the court finds that the risk of erroneous deprivation of Petitioner's strong interest in continued freedom far outweigh any minimal burden placed on Respondents to afford him meaningful due process. Given that he had previously been released from immigration custody, presumably having been found not to be a flight risk or a danger to the community, Respondents were required to provide him with some process either prior to or contemporaneous to his re-detention, including notice and an opportunity to be heard. Providing him with no process constituted a violation of his due process rights.

### Conclusion

The Petition for a Writ of Habeas Corpus is GRANTED. (Doc. 1.) The only appropriate remedy to correct the constitutional violation is release. As a result, Petitioner is ordered to be immediately released. Respondents should notify Petitioner's counsel of the expected time of his release. Respondents shall provide confirmation to the court no later than 7:00 p.m. on this date.

DATED at Rutland, in the District of Vermont, this 18th day of March 2026.

Mary Kay Lanthier
United States District Judge

11